PELLARDIS, Respondent, vs. THE JOURNAL PRINTING COMPANY, Appellant.

*January 12 — April 12, 1898.*

*Evidence: Libel: Damages.*

1. In an action for the publication of a libel in a newspaper, an article on the editorial page of such paper stating the extent of its circulation is admissible in evidence, as bearing upon the question of the damages caused by such publication.

Pellardis vs. The Journal Printing Co.

2. Where the answer in such action admitted that the libelous article referred to the plaintiff, though by an erroneous name, it was not error to charge the jury that while such article referred to the plaintiff, the error in the names would have a bearing upon the question of its publicity and consequently of the amount of the damages.

3. In an action for libel, actual damages cannot be reduced by proof of mitigating circumstances, and the admission of evidence of such circumstances is therefore erroneous.

4. A verdict of §450 damages, in an action for a libel published in a newspaper having a large circulation, charging the plaintiff with the crime of counterfeiting, *held* not excessive.

APPEAL from a judgment of the superior court of Douglas county: CHARLES SMITH, Judge. *Affirmed.*

The facts in the case are stated in the opinion.

For the appellant there was a brief by *Kellogg & Durley*, attorneys, and *Kitchel, Cohen & Shaw*, of counsel, and oral argument by *Emanuel Cohen*. They argued, *inter alia*, that it was error to admit as evidence of the circulation of the paper on the day when the libel was published the statement of its circulation on a different day. The extent of its circulation was important upon the question of actual damages, and should have been proved by competent evidence. Sutherland, Dam. § 1207; *Bigelow v. Sprague*, 140 Mass. 425; *Fry v. Bennett*, 28 N. Y. 324; *Gathercole v. Miall*, 15 Mees. & W. 319; *Comm. v. Blanding*, 3 Pick. 304, 311. There was no damage to the plaintiff because there was no evidence that any person understood the words to refer to her. Bishop, Non-Cont. Law, § 277; *Wilson v. Noonan*, 27 Wis. 598; *Delaney v. Kaetel*, 81 id. 353; 13 Am. & Eng. Ency. of Law, 393; *De Witt v. Wright*, 57 Cal. 576. The words on their face were clearly not published of the plaintiff, and their import was therefore for the jury. *Carlson v. Minn. Tribune Co.* 47 Minn. 337; *Dressell v. Shipman*, 57 id. 23; *Palmer v. Bennett*, 83 Hun, 220; *Hanson v. Globe Newspaper Co.* 159 Mass. 293. Under our statute a defend-

ant may plead and prove mitigating circumstances to re-
duce the damages. This rule is not limited to punitory
damages. *Maxwell v. Kennedy*, 50 Wis. 645. The condi-
tion and character of the plaintiff are circumstances which
should affect the damages. *Larned v. Buffinton*, 3 Mass.
546; *Sayre v. Sayre*, 25 N. J. Law, 235; *Bush v. Prosser*,
11 N. Y. 347; *Wachter v. Quenzer*, 29 id. 547.

For the respondent there was a brief by *Crownhart &
Foley*, and oral argument by *W. R. Foley*.

The following opinion was filed February 8, 1898:

CASSODAY, C. J. This action was brought to recover dam-
ages sustained by the publication of an alleged libel, of which
the following is a copy: "West Superior, Wis., June 21.
(Times Special.) John Paradis, a fourteen year old boy,
was drowned while bathing in the Bay of Superior this after-
noon. He was seized with cramps in deep water. *His
mother*, now living here, was recently released from the fed-
eral prison at Madison, having served a term for counter-
feiting." It appears from the allegations of the complaint,
and the innuendoes therein contained, that the plaintiff is the
mother therein mentioned, and that the article was so pub-
lished of and concerning her.

The answer admits the defendant is a corporation; that
June 22, 1896, it published the Minneapolis Times; that it
published such article on that day in that paper; that the
plaintiff is the mother of Joseph Pellardis, who was drowned
June 21, 1896; that the agents of the defendant in writing
the article, and the defendant in publishing the same, at-
tempted to report the drowning of said Joseph Pellardis, but
failed to do so. The answer further denies all malice, and
alleges good faith; and by way of justification alleges, in
effect, that prior to November 14, 1894, one Frank Turgeon
was engaged in counterfeiting the lawful money of the
United States, in violation of the federal statutes; that dur-

ing the time he had a room in the house occupied by the plaintiff and her family and boarded with them; that the plaintiff had full knowledge of such crime, and willingly connived at, aided, assisted in, and permitted the commission of the crime by Turgeon; that November 14, 1894, criminal warrants were duly issued for the arrest and examination of the plaintiff and Turgeon, charged with the crime of counterfeiting; that thereupon they were arrested, and, after examination, the plaintiff and Turgeon were held to trial, and committed to the county jail for want of bail; that January 29, 1895, three indictments thereon against the plaintiff were returned by the United States grand jury; that two other indictments thereon were duly returned against the plaintiff and Turgeon jointly; that Turgeon pleaded guilty to the charges against him, and was sentenced by the court to five years' imprisonment in the state prison at Waupun; that in default of bail the plaintiff was held in custody under said charge, waiting trial, for twelve and one-half months, when she was discharged without trial, upon motion of the United States district attorney; that she was finally released from custody upon dismissal of the proceedings against her, upon the consideration of sympathy for her and her dependent children and her ill health, and not because of doubt on the part of the district attorney as to her guilt of the crime with which she was charged. The defendant, further answering, and in mitigation of damages, alleges substantially the same facts. The answer further denies each and every allegation, matter, and thing in said complaint contained, not therein admitted.

At the close of the trial the jury returned a verdict in favor of the plaintiff, and assessed her damages at $450. From the judgment entered thereon the defendant brings this appeal.

1. The article published was libelous *per se*. The extent of damages sustained by the plaintiff depended, in a meas-

ure, upon the extent of the circulation of the paper contain-
ing the libel.    That paper contained a statement upon the
editorial page that its circulation for that day was 20,330,
and averaged 21,000 to 24,000 for the month.    We perceive
no error in allowing that statement to be read in evidence,
as bearing upon the question of actual damages.

2. Several errors are assigned by reason of the published
article referring to "John Paradis," as the boy who was
drowned, instead of "Joseph Pellardis;" but, as indicated,
the answer expressly admits that the "plaintiff is the mother
of Joseph Pellardis, who was drowned" on the day named;
and that the defendant, in writing and publishing the arti-
cle, "attempted to report the drowning of said Joseph Pel-
lardis, but failed to do so."    In other words, the answer
admits that the defendant wrote and published the article
of and concerning the plaintiff,— the mother of the boy who
was so drowned.    Among such errors, based upon such dif-
ference in names, was a portion of the charge to the jury,
as follows:  "Plaintiff's family name is Pellardis.    The pub-
lication mentioned her by the name of Paradis, and speaks
of the boy as John, whereas his name was Joseph.    That
simply, gentlemen, is, there is not any question but plaintiff
was referred to here, but the error in the names your atten-
tion is called to as bearing upon the question of the public-
ity; that is, the degree to which the publication pointed to
the plaintiff, as bearing upon the question of the amount of
damages."    In view of the admission in the answer men-
tioned, we perceive no error in charging the jury to the
effect that there was no question but that the plaintiff was
referred to in the article.    The court was only concerned
with the meaning of the article as applied to the plaintiff.
*Hanson v. Globe Newspaper Co.* 159 Mass. 295, 296.    True,
the difference in names might induce readers of the article
to think that some one other than the plaintiff was referred
to, and to that extent was favorable to the defendant, but

to that extent the jury were instructed that they might consider it "as bearing upon the question of the amount of damages." It follows that under the pleadings there was no ambiguity in the words published which required that their meaning should be submitted to the jury. What is said sufficiently disposes of the other errors based upon such difference of names.

3. There is another feature of the case, which obviates several errors assigned. On the trial the plaintiff disclaimed any punitory damages, and the court ordered such disclaimer of any claim for punitory damages to be placed upon record. Upon that point the court charged the jury: "Coming to the question of damages, you will give the plaintiff such sum as will fairly compensate her for the injury the publication has proximately done to her reputation so far as it is untrue; also such sum as will fairly compensate her for the injury to her feelings proximately caused by the publication, so far as it is untrue. You will give *nothing* further in way of *exemplary damages;* nothing in the way of punishment of the defendant, or as warning to it or other papers; and in passing upon the question of damages you will, of course, carefully consider all the circumstances of the case, so far as they have been revealed by the evidence given in court." This confined the plaintiff's recovery to actual damages. This court has recently held that such damages cannot be reduced by the defendant's alleging and proving mitigating circumstances. *Candrian v. Miller*, 98 Wis. 164. The libelous article stated that the plaintiff had been "recently released from the federal prison at Madison, *having served a term for counterfeiting.*" The answer does not attempt to justify this charge, and what it alleges about her arrest, indictment, and being committed to jail for want of bail, and finally discharged, without trial and upon the sole ground of sympathy, could only have the effect of mitigating the damages. Upon this state of the record, and under the rul-

ing of this court in the case cited, the plaintiff was entitled to a verdict for actual damages; and such damages could not be reduced by any mitigating circumstances. There was no error, therefore, in charging the jury that, in "so far as the publication implies that she [the plaintiff] had been convicted and punished for counterfeiting, it is defamatory and libelous, and she is entitled to a verdict in her favor." To justify the truth of the charge in such a case, the allegations of the answer and the proof must be as broad as the charge against the plaintiff. *Burford v. Wible*, 32 Pa. St. 95; *Swann v. Rary*, 3 Blackf. 298; *Buckner v. Spaulding*, 127 Ind. 229. True, where several distinct things are charged in the libel, the defendant may justify as to one, although he fails as to the others; but as to that one, the justification must be full. *Fero v. Ruscoe*, 4 N. Y. 162; *Holmes v. Jones*, 121 N. Y. 461; *Lanpher v. Clark*, 149 N. Y. 472. But here there was only one thing charged in the libel, as indicated.

It follows from what has been said that what is pleaded and proved and attempted to be proved in respect to the arrest, indictments, and the committing of the plaintiff to jail for want of bail, and her criminality and complicity with Turgeon in counterfeiting, could only be available to the defendant in mitigating the damages. But, as indicated, since the plaintiff, under the charge, could only recover actual damages, and since such damages could not be reduced by mitigating circumstances, it follows that, in so far as such testimony was admitted, it was prejudicial to the plaintiff; and there was no error in excluding any of it. Whether it was error to charge the jury to the effect that counterfeiting and the passing of counterfeit money are distinct crimes, or whether the latter may be included in the former, it is not necessary here to decide, for the reasons stated. It is true, the case does not seem to have been tried with reference to the law as held in *Candrian v. Miller*, 98 Wis. 164, otherwise the charge might, in some respects, have been different.

5. We cannot say that the damages are excessive.

What has been said, it is believed, covers, in effect, all the errors assigned, although they have not all been specifically considered; in fact, they are so numerous and of such a character as not to require specific consideration. We find no reversible error in the record.

*By the Court.*— The judgment of the superior court of Douglas county is affirmed.

BARDEEN, J., took no part.

A motion for a rehearing was denied April 12, 1898.